UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Jean Draper,                                     No. 13-08-13199 JA

Debtor.

ORDER SETTING ASIDE DEFAULT ORDER GRANTING
MOTION FOR RELIEF FROM AUTOMATIC STAY

This matter is before the Court on Debtor's Motion to Set Aside Order for Relief From Stay ("Debtor's Motion") (Docket No. 65). Debtor seeks to set aside a Default Order Granting Motion for Relief from Automatic Stay ("Default Order"), filed January 25, 2010 (Docket No. 63). The Court held a final hearing on March 8, 2010 and took the matter under advisement. Upon consideration of the testimony, the evidence, argument of counsel, and relevant case law, the Court finds that the Default Order should be set aside. In reaching this determination, the Court makes the following findings and conclusions in accordance with Rule 7052, Fed.R.Bankr.P.

FACTS

On January 4, 2007, Paul Chapman and Mary Chapman (the "Chapmans"), as sellers, and the Debtor, Jean Draper, together with her daughter, Julia Draper (the "Drapers"), as purchasers, entered into a Real Estate Contract ("Real Estate Contract" or "Contract") for the purchase and sale of a residential property located at 357 Hwy. 304, La Joya, Socorro County, New Mexico (the "Property"). The purchase price of the Property was $185,000.00. The Property is the residence of the Debtor and her daughter. The Drapers made a down payment of $60,000.00, and agreed to pay the balance of the purchase price, with interest thereon at the rate of 6% per annum, in monthly installments of $1,387.76 due on the fourth day of each month beginning February 4, 2007 until the purchase price was paid in full. The Real Estate Contract provided

that the payments were to be made to the escrow agent ("Escrow Agent"). The Real Estate Contract provided further that the Escrow Agent would hold certain documents in escrow to be released to the Drapers upon completion of all payments due under the Contract, or to be released to the Chapmans upon an uncured default by the Drapers and termination of the Contract by the Chapmans.[1]

After Debtors had made approximately thirteen monthly payments under the Real Estate Contract, and were in arrears for approximately six payments, the Chapmans gave a notice of default under the Real Estate Contract. Before the 30-day cure period expired, Jean Draper filed a voluntary petition under Chapter 13 on September 26, 2008.

On March 10, 2009, the Chapmans filed a Motion for Relief from Automatic Stay (Docket No. 33) seeking to allow them to exercise their legal and equitable rights under the terms of the Real Estate Contract. The Court held a final hearing on the motion on June 11, 2009, and on July 21, 2009 issued its Order Denying Motion for Relief From Automatic Stay ("Stay Relief Order") (Docket No.58). The Stay Relief Order directed the Debtor to "sell the

---

[1] Real estate contracts for the sale and purchase of real property are commonly used in New Mexico. *See McCanna v. Burke*, 197 B.R. 333, 337 (D.N.M.1996)("Although not statutorily recognized in New Mexico, real estate contracts have been afforded judicial blessing by the courts of this state.)(citing *Russell v. Richards*, 103 N.M. 48, 702 P.2d 993 (1985); *Manzano Industries, Inc. v. Mathis*, 101 N.M. 104, 678 P.2d 1179 (1984); *First Nat'l Bank v. Cape*, 100 N.M. 525, 673 P.2d 502 (1983); *Eiferle v. Toppino*, 90 N.M. 469, 565 P.2d 340 (1977); *Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960)). When a parcel of real property is sold under a real estate contact, the real estate contract is recorded in the records of the county clerk of the county in which the property is situated. The sellers deliver an executed warranty deed to the property to an escrow agent under which the buyers are the transferees. The buyers deliver an executed special warranty deed to the property to the escrow agent under which the sellers are the transferees. The sellers retain legal title to the property. The buyers have equitable title. The buyers' monthly payments are made to the escrow agent, who disburses the payments to the sellers. If the buyers pay the real estate contract in full, the escrow agent delivers the deeds to the buyers. The buyers then record the warranty deed and void the special warranty deed. If the buyers default under the real estate contract and fail to cure the default as required, and the sellers elect to terminate the contract, the escrow agent delivers the deeds to the sellers. The sellers then record the special warranty deed and void the warranty deed. If the sellers elect to terminate the real estate contract following an uncured default, the sellers retain the payments already made under the real estate contract, and the buyers' equitable title to the property terminates when the special warranty deed is recorded.

property and pay off the Real Estate Contract on or before the date the January 2010 payment is due or commence making regular monthly payments under the terms of the Real Estate Contract by that time and each month thereafter until the Real Estate Contract is paid in full." The Stay Relief Order further ordered that "[i]f the Debtor fails to make the payments, counsel for the Chapmans can file an affidavit and present an order to the Court which terminates the automatic stay."

Shortly after the January 2010 payment became due, on or about January 5, 2010, Mr. Chapman contacted his attorney asking him to file an affidavit of default and obtain relief from the automatic stay. On January 20, 2010, the Chapmans filed an Affidavit stating that as of January 6, 2010 Debtor had not paid off the Real Estate Contract nor made the payment for the month of January (Docket No. 61), and submitted a default order to the Court to terminate the automatic stay. On or about January 22, 2010, at the Court's direction, the Chapmans filed an Amended Affidavit that specified the date in January 2010 when the January 2010 payment under the Real Estate Contract was due, and resubmitted the Default Order to the Court. The Court entered the Default Order on January 25, 2010. The Default Order contained no provision altering the effect of Federal Rule of Bankruptcy Procedure 4001(a)(3).[2]

Shortly after the entry of the Default Order, the Escrow Agent released the escrowed documents to the Chapmans. On or before January 28, 2010, Mr. Chapman recorded in Socorro County a Special Warranty Deed conveying all of the Drapers' right, title and interest in the Property to the Chapmans. Debtor tendered the payment under the Real Estate Contract due January 4, 2010 in the amount of $1,394.71 to the Escrow Agent on or about January 22, 2010.

---

[2] Rule 4001(a)(3) provides:
> An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise. Rule 4001(a)(3), Fed.R.Bankr.P.

The Escrow Agent disbursed the payment to the Chapmans, and the Chapmans accepted the payment.[3] The Chapmans used the funds to pay past due taxes owed on the Property.

Debtor tendered the payment under the Real Estate Contract due February 4, 2010 in the amount of $1,394.71 to the Escrow Agent on February 12, 2010. The Escrow Agent returned the payment to the Debtor with a cover letter dated February 12, 2010 stating the check was returned because "REC defaulted." There is no evidence of any communication by the Chapmans or Escrow Agent to the Debtor or her daughter after the payment was tendered on January 22, 2010 until the Escrow Agent returned the check tendered on February 12, 2010.

## DISCUSSION

Debtor has asked the Court to set aside the Default Order on the ground that the Chapmans' acceptance of the payment tendered on January 22, 2010 that was due under the Real Estate Contract on January 4, 2010 waived their right to enforce the January 4, 2010 payment due date. Because the Chapmans waived their right, the Debtor argues that the stay should not have been terminated based on failure to timely make the January 2010 payment as required under the Real Estate Contract. The Chapmans counter that by the express terms of the Stay Relief Order, the Debtor's failure to make the January 4, 2010 payment when due entitled them to relief from the stay to enforce their forfeiture remedy under the Real Estate Contract.

The Stay Relief Order provided that if the Debtor failed to make the payments when due under the Real Estate Contract beginning with the payment due in January 2010, the Chapmans would be entitled to file an affidavit to that effect and present an order to the Court which terminates the automatic stay. The Court entered the Default Order on January 25, 2010 after such an affidavit was filed.

---

[3] From the evidence, it is not clear whether the Chapmans received the January 2010 payment before or after Mr. Chapman recorded the Special Warranty Deed.

-4-

To determine when payments under the Real Estate Contract were due, and whether acceptance of the payment otherwise due on January 4, 2010 operated to waive the Chapmans' right to obtain relief from the stay based on the Debtor's failure to timely make the January 4, 2010 payment, the Court will construe the terms of the Real Estate Contract consistent with applicable state law.[4] The Real Estate Contract executed by the Drapers and the Chapmans provided, in part:

> Acceptance by Escrow Agent of any payment entered shall not be deemed a waiver by Seller, or extension of time for cure, *of any other default* under this Contract.
>
> Real Estate Contract, p.2 (emphasis added).

Because the language in the Contract specifically applies to "any other default," it cannot also apply to the payment at hand. In other words, this language applies to *prospective* defaults, and suggests by negative implication that the acceptance of a late payment does constitute a waiver of the seller's right to terminate the Contract based on the untimeliness of that payment. The Chapmans contend that Mr. Chapman's acceptance of the payment after the deeds were released from escrow does not affect the Chapman's right to terminate the Real Estate Contract but only results in an obligation to return the funds. This Court disagrees.

A seller's termination of a real estate contract based on the buyer's failure to timely cure a default after notice results in a forfeiture of the buyer's title to the property. Equity abhors a forfeiture.[5] "[C]ontractual agreements contemplating forfeitures must be clear and unequivocal before forfeiture would be enforced." *Cortez v. Cortez,* 145 N.M. 642, 648, 203 P.2d 857, 863 (2009). Where the language is not clear and unambiguous, the court should "choose that

---

[4] *McCanna,* 197 B.R. at 338 ("[I]n the absence of a 'clear and manifest' federal statutory purpose, the Bankruptcy Code must adopt New Mexico law dealing with forfeiture under a real estate contract.")(citation omitted).
[5] *See Easterling v. Peterson,* 107 N.M. 123, 124, 753 P.2d 902, 903 (1988)("New Mexico has long adhered to an abhorrence for forfeiture of contracts.")

-5-

construction which avoids a forfeiture." *Id.*[6] Further, "when presented with a forfeiture clause in a contract, courts interpret the contractual language narrowly and construe all inferences against the party seeking to enforce the forfeiture." 145. N.M. at 646, 648, 203 P.2d at 861. The language at issue in the Real Estate Contract, although not entirely clear, can be construed to provide that the seller waives the right to enforce remedies as the result of a late payment if the seller accepts the late payment. To prevent forfeiture, the Court should construe the provision in the Real Estate Contract strictly and resolve doubts against the party for whose benefit the provision is included, in this case, the Chapmans. Thus, the waiver provision, which suggests by negative implication that acceptance of a late payment will constitute a waiver of the right to enforce remedies as a result of that late payment, should be construed to provide for such a waiver.

Under the terms of the Real Estate Contract, by accepting the late payment, the Chapmans waived their right to forfeiture premised on the fact that such payment was not made by January 4, 2010 as required under the Contract. The Chapmans counter that because forfeiture of the Contract occurred before the payment was accepted, acceptance of the payment did not constitute a waiver of the right to declare forfeiture. They assert that they should simply be required to return the funds to the Drapers. This argument also fails.

Rule 4001(a)(3), Fed.R.Bankr.P., operated to postpone the effectiveness of the Default Order for a period of fourteen days from its entry, or until February 8, 2010 [7] "The purpose of

---

[6] *Cf. Yu v. Paperchase P'ship,* 114 N.M. 635, 643, 845 P.2d 158, 166 (1992)(stating that "valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement will work injustice after a delayed tender.")(internal quotation marks and citation omitted); *Maloof v. Prieskorn*, 136 N.M. 516, 518, 101 P.3d 327,329 (Ct. App. 2004) (reversionary language is strictly construed to avoid a forfeiture).
[7] Federal Rule of Bankruptcy Procedure 4001 provides in pertinent part:
    (a) Relief From Stay; Prohibiting or Conditioning the Use, Sale, or Lease of Property

-6-

[Rule 4001(a)(3)] . . . is to give debtors the opportunity to request a stay pending an appeal of the order lifting the automatic stay prior to enforcement or implementation of the order.[8] The Escrow Agent, by releasing the deeds to Mr. Chapman, and Mr. Chapman, by recording the Special Warranty Deed on or before January 28, 2010, acted while the 14-day stay of the Default Order was still in effect. The deeds should not have been released from escrow on or before January 28, 2010. The release of the deeds to Mr. Chapman, and his subsequent recording of the Special Warranty Deed violated the 14-day stay.[9] With limited exceptions not applicable here, an act taken in violation of the stay is void *ab initio*.[10] Therefore, the purported termination of the Real Estate Contract and recordation of the Special Warranty Deed by that date were void. The Chapmans accepted the January 2010 payment under the Real Estate Contract while the Contact was still in effect and prior to a valid termination of the Contract.

Under the facts and circumstances of this case, the Court finds that the Chapmans' acceptance of the untimely January 2010 payment waived their right to obtain relief from the stay and declare a forfeiture under the Contract based on the Debtor's failure to timely make the January 4, 2010 payment. In order to insist that the Debtor strictly comply with the future payment due dates under the Real Estate Contract, the Chapmans must give the Debtor reasonable advance notice that they expect strict future compliance.[11] As a result, the Court finds that the payment tendered on February 12, 2010 was timely. The Court also finds that

---

       (3) Stay of order. An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.
       Rule 4001(a)(3), Fed.R.Bankr.P.

[8] *In re Derringer*, 375 B.R. 903, 909 (B.A.P. 10th Cir. 2007).

[9] *Cf. Derringer,* 375 B.R. at 909(finding that an action taken by creditors before the expiration of the stay under Rule 4001(a)(3) violated the automatic stay).

[10] *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994)(any action taken in violation of the stay is void and without effect)

[11] If a creditor waived the right to insist on strict compliance with the terms of a contract, to reinstate the right to insist on strict compliance the creditor is obliged to give reasonable advance notice of his intention to do so. *Easterling*, 753 P.2d at 903.

since the Chapmans refused the Debtor's tender of the February 2010 payment, it excused the Debtor from making further tenders of payment until the Chapmans signify a willingness to accept future tenders of payment.[12]

For these reasons, the Court finds that the Default Order should be set aside; that the escrow be reopened; that a document be recorded in the real property records of Socorro County to negate the filing of the Special Warranty Deed; and that deeds be turned over to the Escrow Agent so that the Escrow Agent can continue to hold the deeds according to the terms of the Contract. The Court further finds that the Chapmans have, through Mr. Chapman's testimony in the case, now given the Debtor reasonable advance notice that they expect strict future compliance with the payment terms under the Real Estate Contract. Therefore, the Chapmans may insist on strict compliance with the payment terms of the Real Estate Contract beginning with the payment due April 4, 2010, and can enforce their rights under the Stay Relief Order if any of those payments are not made when due.

IT IS THEREFORE ORDERED that the Default Order Granting Motion for Relief from Automatic Stay is set aside.

ORDERED FURTHER that the escrow be reopened under the terms of the Real Estate Contract; that a document be recorded in the real property records of Socorro County, New Mexico to negate the filing of the Special Warranty Deed; and that deeds be turned over to the Escrow Agent so that the Escrow Agent can hold deeds according to the terms of the Contract.

---

[12] *See Carmichael v. Rice*, 49 N.M. 114, 119, 158 P.2d 290, 293 ("A tender need not be kept good where it clearly appears that the tender if made will not be accepted." citing Am.Jur. Tender, p. 234, sec. 28); *See also*, *Shaner v. West Coast Life Ins. Co.*, 73 F.2d 681, 384 (10th Cir. 1934)(refusal to accept an offer of tender excuses the necessity to tender payment); *Oklahoma Farm Mortgage Co. v. Cesar*, 178 Okla. 451, 62 R.2d 1269 (Okla.1936)(the long-standing rule is that tender is excused where it is known that the tender would not be accepted by the creditor); *Telemark Development Group, Inc. v. Mengelt,* 181 F.Supp.2d 888, 892 (N.D.Ill.2001)("[t]he long-standing rule is that tender is excused where it is known that the tender would not be accepted by the creditor").

ORDERED FURTHER that Debtor's tender of the payments to the Escrow Agent of the payments due under the Real Estate Contract on February 4, 2010 and on March 4, 2010 will be deemed timely if tendered to the Escrow Agent no later than March 22, 2010.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Court

Entered on Docket Date:   March 12,. 2010

Copies to:
Jean Draper
357 Hwy. 304
La Joya, NM 87028

Ronald E Holmes
112 Edith Blvd NE
Albuquerque, NM 87102-3524
*Attorney for Debtor*

David N. Hernandez
David N. Hernandez & Associates, P.A.
2221 Rio Grande Blvd. NW, Suite 100
Albuquerque, NM 87104
*Attorney for Creditors Paul and Mary Chapman*